# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**NATIONAL CAPITAL PRESBYTERY**,
11300 Rockville Pike # 1009, Rockville,
MD 20852;

**MIZO PRESBYTERIAN CHURCH**,
610 S Frederick Ave, Gaithersburg, MD
20877;

**Rev. LAL ENGZAU**,
39 Consett Place, Frederick, MD 21702;

**LAL HMUN SANGI**,
39 Consett Place, Frederick, MD 21702,

        **Plaintiffs**,

    v.

Case No.: ___18-2681_____

**KIRSTJEN NIELSEN**, U.S. Secretary of
Homeland Security,
245 Murray Lane, Washington, D.C. 20528;

**L. FRANCIS CISSNA**, Director of U.S.
Citizenship and Immigration Services,
245 Murray Lane, Washington, D.C. 20528;

**U. S. CITIZENSHIP AND
IMMIGRATION SERVICES**, an agency
of the United States,
245 Murray Lane, Washington, D.C. 20528;

**THE UNITED STATES OF AMERICA**,

        **Defendants**.

## COMPLAINT FOR RELIEF UNDER THE RELIGIOUS FREEDOM AND RESTORATION ACT, ADMINISTRATIVE PROCEDURE ACT, DECLARATORY JUDGMENT, AND WRIT OF MANDAMUS

1.     The United States was founded in large part as a safe haven by those seeking

religious freedom.  Indeed, freedom of religion is enshrined in our Constitution and our laws.  In

order to continue to protect these religious freedoms from government interference or burden,

Congress passed the Religious Freedom and Restoration Act (RFRA) which places a heavy responsibility on the government to not substantially burden anyone's sincere exercise of religion.  In this case, not only did Defendants not follow their responsibility to ensure Plaintiffs' religious exercise was not substantially burdened, but they misapplied the law and their own regulations to essentially foreclose all possibility of Plaintiffs being able to file petitions for religious visas. They did so by taking the position that Plaintiff National Capital Presbytery is not the proper petitioner which is diametrically opposed to Plaintiffs' ecclesiastical governance, and by creating an arbitrary and insurmountable standard of proof in clear violation of RFRA.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1651, as a civil action arising under the Constitution, laws, or treaties of the United States (Federal question); 42 U.S.C. § 2000bb–1(a)–(b) (2006), reviewing whether government action substantially burdens a person's religious exercise and whether the burden is justified by a compelling governmental interest advanced via the least restrictive means (Religious Freedom and Restoration Act, or RFRA); 28 U.S.C. § 1361, as an action to compel an officer or employee of the United States to perform a duty owed to Plaintiffs (Mandamus), 28 U.S.C. §§ 2201-02 (declaratory relief); and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*., as an action to compel agency action unlawfully withheld and to hold unlawful and set aside agency action, findings, and conclusions found to be-- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law and the Immigration & Nationality Act (INA) and regulations implementing it (Title 8 of the C.F.R.).

3.   Plaintiffs have standing to assert relief in this action.  5 U.S.C. § 702; *see also*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (*quoting Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

4.   Venue is proper in the District of Columbia pursuant to 28 U.S.C. §1391(e)(1)(A). Plaintiffs sue the Defendants in their official capacities as officers and employees of the United States. Venue is also proper under 5 U.S.C. § 703.

5.   Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b) and 702, the APA.  *See Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C. § 1331, to review plaintiff's complaint for declaratory and injunctive relief against federal agency).

6.  8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" The present action does not seek review of a removal order. It is simply an action to compel USCIS to right an erroneous decision.

7.  Furthermore, 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" Because adjudication of a properly filed visa petition is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original jurisdiction over this claim.

3

*See Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) (holding that "the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application" for adjustment of status).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.   Plaintiffs have exhausted their administrative remedies.  They filed an administrative appeal which was denied.  There are no other administrative remedies to be exhausted.

9.   This matter is subject to 5 U.S.C. § 704.  By denying Plaintiffs' nonimmigrant visa petition, the U.S. Citizenship and Immigration Services ("USCIS") has concluded a "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Agency action in this instance is final agency action.  Accordingly, Plaintiffs have exhausted all necessary administrative remedies that may exist. *See Darby v. Cisneros*, 509 U.S. 137 (1993). 5 U.S.C. § 701 et. seq. (APA) provides a waiver of sovereign immunity.

## PARTIES

10. Plaintiff National Capital Presbytery (NCP) is a District of Columbia corporation and a nonprofit religious organization duly recognized by the IRS.  Plaintiff NCP is a fully chartered organization under Presbyterian Church USA, one of the largest denominations in the United States and the world.

11. Plaintiff Mizo Presbyterian Church is a fully chartered Presbyterian church under National Capital Presbytery, and, by extension, Presbyterian Church USA.

12. Plaintiff Rev. Lal Engzau is a duly ordained Presbyterian minister.  He was previously granted an R-1 visa to come to the United States to serve the Mizo Presbyterian Church from Myanmar.  Defendants denied Plaintiffs' second R-1 visa petition which would

have given Rev. Engzau an extension on his visa. *See* Exhibit 1, I-129 denial decision; Exhibit 2, administrative appeal dismissal decision.

13. Plaintiff Lal Hmun Sangi is Plaintiff Engzau's spouse and therefore the derivative beneficiary of the visa petition filed by Plaintiff NCP. Ms. Sangi had concurrently filed an application for extension of status which was also denied as it is wholly dependent on the NCP visa petition which was denied.

14. Defendant Kirstjen Nielsen is the Secretary of the Department of Homeland Security (DHS), and as such is charged by statute with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens. She is sued in her official capacity only.

15. Defendant L. Francis Cissna is the Director of United States Citizenship and Immigration Services (USCIS) of the DHS and as such is charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens pursuant to a delegation of authority from the Secretary of Homeland Security of the United States under 8 U.S.C. § 1103(a). He is sued in his official capacity only.

16. United States Citizenship and Immigration Services (USCIS) is an agency of the United States in charge of reviewing and deciding visa petitions such as Plaintiffs'.

17. Defendants are agents of, and collectively represent the United States of America.

## FACTUAL AND PROCEDURAL BACKGROUND

18. Presbyterian Church USA (PC USA) is the largest Presbyterian denomination in the United States with 1,415,053 active members and 19,491 ordained ministers in 9,304

congregations at the end of 2017.[1] Structurally, it is divided into many regional presbyteries which, in turn, are comprised of numerous local congregations.  Though they are separate legal entities, they act as one ecclesiastical body.

19. National Capital Presbytery and Mizo Presbyterian Church are a part of the same religious organization, PC USA. National Capital Presbytery is a fully chartered organization under PC USA. Mizo Presbyterian Church is also a fully charted congregation within the National Capital Presbytery and PC USA. Exhibit 3, Church Directory, Exhibit 4, Statement from Rev. Karen Chamis.

20. The pastors, leaders, and members of the congregations have the privileges of participation in presbytery meetings and financial support while maintaining compliance with the Constitution of the Presbyterian Church USA. The Book or Order (the Constitution of the Presbyterian Church USA) states in relevant part[2]:

> G-2.0505 Transfer of Ministers of Other Denominations a. When a minister of another Christian church is called to a work properly under the jurisdiction of a presbytery, **the presbytery**, after the constitutional conditions have been met, **shall recognize the minister'**s previous ordination to ministry. Such ministers shall furnish credentials and evidence of good standing acceptable to the presbytery, and shall submit satisfactory evidence of possessing the qualifications of character and scholarship required of candidates of this church. (G-2.0607 and G-2.0610). In exceptional circumstances the following provisions will apply: (1) **In the case of ministers for immigrant fellowships and congregations, a presbytery may, if it determines that its strategy for mission with that group requires it, recognize the ordination and receive as a member of presbytery a new immigrant minister who furnishes evidence of good standing in a denomination**, even though at the time of enrollment that minister lacks the educational history required of candidates, and provide such educational opportunities as seem necessary and prudent for that minister's successful ministry in the presbytery. (2) A minister of another Reformed church who has been ordained for five or more years may be granted an exemption for some or all

---

[1] http://oga.pcusa.org/site_media/media/uploads/oga/pdf/statistics/2017_comparative_summaries.pdf.

[2] The entire Book of Order can be found at:
http://oga.pcusa.org/site_media/media/uploads/oga/pdf/book-of-order2017-electronic.pdf

of the examinations required of candidates for ordination by a two-thirds vote of
the presbytery.

(Emphasis added).

21. As a matter of ecclesiastical governance, the local congregations (such as Mizo) and

the Presbytery (such as National Capital) act as one although they may be distinct legal entities.

It is in this vein, the ecclesiastical oneness, and not the traditional legal entity distinction, that

Defendants must see the petitioner.  Furthermore, as it is clearly seen from the above cited

section of the Book of Order, it is the Presbytery (National Capital) and not the local

congregation that makes the religious appointment and therefore has the duty and capacity to

petition for the immigrant minister even though it may be the local congregation that ultimately

pays his or her salary. Indeed, it has been a long-standing practice of Plaintiffs to have the

presbytery be the petitioning organization for R-1 visas such as the case here even though the

minister will serve a local congregation which is a distinct legal entity from the presbytery.

22. It is due to this long-standing practice that Plaintiff National Capital Presbytery first

filed an I-129 petition for an R-1 visa for Plaintiff Rev. Lal Engzau, a citizen of Myanmar and an

ordained Presbyterian minister for many years.  That first petition was filed in 2014 and

approved in 2015.

23. Plaintiff National Capital Presbytery filed a second I-129 petition to renew Plaintiff

Engzau's status in April 2017.

24. Defendants issued Plaintiffs a request for evidence raising among other things two

issues which are relevant to this litigation.  First, Defendants stated that although National

Capital Presbytery was the petitioning organization, it appears the funds were paid by Mizo

Presbyterian Church.  As a result, Defendants maintained that the petitioner (NCP) was not

providing compensation to Rev. Engzau.  Second, they stated that the actual compensation

provided to Rev. Engzau did not match exactly what the prior petition had stated he would receive.  Exhibit 5, Request for Evidence.

25. Plaintiffs responded to this request and explained their ecclesiastical position and tried to resolve the pay discrepancies.

26. The petition was denied.  Exhibit 1. The denial decision continued to maintain among other things that because Plaintiff Mizo Presbyterian Church had provided the compensation, Plaintiff National Capital Presbytery was not providing compensation as required by federal regulations governing R nonimmigrant status. *See* 8 C.F.R. §214.2(r)(11).

27. In addition to the I-129 petition being denied, Defendants also denied an I-539 application filed by Plaintiff Sangi, Rev. Engzau's wife and therefore his dependent, to renew her R-2 status.

28. Since this denial, both Rev. Engzau and his wife are accruing unlawful presence and are at risk being placed in removal proceedings and removed from the United States.  They have and continue to suffer immediate and irreparable injury.

29. Plaintiffs appealed this determination to the Administrative Appeals Office.  Exhibit 2. Plaintiffs explained that the compensation structures had changed and that although it appeared like the proffered compensation packages were radically different from one petition to the next, they were substantially the same and that Rev. Engzau was paid what he was promised. Furthermore, Plaintiffs explained their ecclesiastical governance and that Defendants' position that the petitioning legal entity must be the one to pay Rev. Engzau's salary amounted to a violation of the Religious Freedom and Restoration Act.  As a result, Plaintiffs sought an exemption under RFRA.

30. Defendants dismissed the appeal.  Defendants did not address any of the RFRA issues raised by Plaintiffs and instead sidestepped the real issue (Defendants' violation of Plaintiffs' RFRA rights through improper application of their own regulation) by essentially stating that because Plaintiffs had not provided what essentially amounted to proof beyond a reasonable doubt that they had actually paid several line items in the compensation package that they did not prove that they *intended* to pay the beneficiary.  To be sure, there is no requirement in the statute or regulation that the petitioner must have paid exactly what it stated it intended to pay 2-3 years earlier.  The only requirement is that the beneficiary is compensated, there are no specific amounts required.  In a footnote in their decision, Defendants declined to reach the issue of which entity is the proper petitioner.

## **LEGAL FRAMEWORK**

A.  Religious Freedom and Restoration Act

31. The Religious Freedom and Restoration Act of 1994 (RFRA) was passed by Congress in order to provide protection to individuals' and organizations' sincerely held religious beliefs from government interference and burden.  It provides in relevant part:

> Free exercise of religion protected
>
> (a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
> (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>   (1) is in furtherance of a compelling governmental interest; and
>   (2) is the least restrictive means of furthering that compelling governmental interest

32. A prima facie violation of RFRA is established by showing 1) a substantial burdening of, 2) a sincere, 3) exercise of religion.  Once a prima facie RFRA violation is shown, the burden

shifts to the government to show that it is advancing 1) a compelling interest and that this is the 2) least restrictive means by which to achieve that interest.

33. RFRA permeates and amends the entirety of federal law, including laws of general application such as the Immigration and Nationality Act. RFRA's reach is broad, effecting changes to all federal government action. Scott D. Pollock, *Immigration Law vs. Religious Freedom: Using the Religious Freedom Restoration Act to Challenge Restrictive Immigration Laws and Practices*, 12 Rutgers J. of Law and Religion 296 (2011). In *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997), the Supreme Court stated the following in relation to RFRA: "Sweeping coverage ensures its intrusion at every level of government, displacing laws and prohibiting official actions of almost every description *and regardless of subject matter*." (Emphasis added). *See also*, Religious Freedom Restoration Act § 6, 42 U.S.C. § 2000bb-3(a) ("This Act applies to all Federal law ... whether statutory or otherwise, and whether adopted before or after November 16, 1993.").

34. The Establishment Clause of the U.S. Constitution prohibits government involvement in ecclesiastical decisions. Courts have held that the choice of a minister and the relationship the church has with its minister (employment, financial or otherwise) is *per se* religious exercise. In *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 188 (2012), the Supreme Court stated:

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*See also*, *McClure v. Salvation Army*, 460 F.2d 553, 559-560, (5th Cir. 1972) ("The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern."); *Petruska v. Gannon University*, 462 F.3d 294, 306 (3rd Cir. 2006) ("Unlike an individual who can speak on her own behalf, however, the church as an institution must retain the corollary right to select its voice. A minister is not merely an employee of the church; she is the embodiment of its message. A minister serves as the church's public representative, its ambassador, and its voice to the faithful. Accordingly, the process of selecting a minister is *per se* a religious exercise."); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002).

35. RFRA provides a separate and distinct cause of action from the APA. *Northern Arapaho Tribe v. Ashe*, 925 F.Supp.2d 1206, 1211 (D. Wyo. 2012) ("Plaintiffs' claim here is not under the APA, it's under RFRA […]. RFRA provides Plaintiffs with a cause of action that is separate from the APA.").  In addition to providing a separate cause of action, "RFRA also provides a different standard of review of government action than the APA. Compare 42 U.S.C. § 2000bb–1(a)–(b) (2006) (reviewing whether government action substantially burdens a person's religious exercise and whether the burden is justified by a compelling governmental interest advanced via the least restrictive means), with 5 U.S.C. § 706(2)(A) (2006) (reviewing whether agency action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". *Id., see also, O Centro Espirita Beneficiente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239, 1259 (D.N.M. 2017) (providing a more extensive case law overview of RFRA being a separate cause of action from the APA).

B.  Religious Worker Visa

36. 8 U.S.C. § 1101(a)(15)(R) provides the statutory authority for the R visa used by

nonprofit, religious organizations to allow their ministers to serve their flocks.  It provides as

follows:

> (R) an alien, and the spouse and children of the alien if accompanying or
> following to join the alien, who—
>> (i) for the 2 years immediately preceding the time of application for
>> admission, has been a member of a religious denomination having a bona
>> fide nonprofit, religious organization in the United States; and
>> (ii) seeks to enter the United States for a period not to exceed 5 years to
>> perform the work described in subclause (I), (II), or (III) of paragraph
>> (27)(C)(ii);

37. The regulations implementing the statute require that the petitioning organization

demonstrate how it intends to compensate the beneficiary. 8 C.F.R. §214.2(r)(11).  The

regulation does not require W-2 salaried income from the petitioner's entity as the only form of

acceptable income.  Compensation can be provided in myriad ways.  In many churches, the

compensation of a minister can come even from love offerings (donations) from the

congregation therefore not out of the petitioning entity's budget or funds.

38. The current version of the regulation was adopted in 2008 in response to concerns

about widespread fraud.  This was the first time that the compensation requirement came into

being.  The intent of the new regulation was not to create a burdensome requirement that one

must prove every penny of compensation, but rather that petitioners must show how they intend

to compensate so as to curb fraud in petitions where a position may not even truly exist; if one

has made provision in budgets and expenditures, the position provided for is much more likely to

be bona fide.  Defendants specifically noted in the preamble to the regulation at 73 Federal

Register 72276, 72283:

> The final rule is intended to permit religious organizations to petition for admission of religious workers under restrictions that have less than a substantial impact on the individual's or an organization's exercise of religion.

Indeed, there was no intent to apply the compensation requirement in an exacting manner since doing so would elevate the standard of proof to something well beyond preponderance of the evidence, and it would place a heavy, if not impossible, burden on organizations that have non-traditional or flexible compensation.  In other words, it matters that a minister gets paid, not how much[3], how, where, when or by whom.

39. RFRA provides a remedy to those whose religious freedom is burdened by government, including the Petitioner in this matter. The remedy is to request a specific exemption from the burdensome regulation. USCIS acknowledged this by this statement on page 72283 of volume 73 of the Federal Register:

> An organization or individual who believes that the RFRA may require specific relief from any provision of this regulation may assert such a claim at the time they petition for benefits under the regulation.

## CAUSES OF ACTION

## COUNT ONE

## VIOLATION OF 42 U.S.C. § 2000bb–1(a)–(b) (RFRA CLAIMS)

40. The allegations contained in paragraphs 1 through 39 above are repeated and re-alleged as though fully set forth herein.

41. For USCIS to apply this regulation to deny this petition, it must show that it is exempt under section 3(b) of RFRA. To deny this petition, USCIS must show that the regulation, and the denial of this petition under it, is in the furtherance of a compelling governmental interest, and that this regulation is the least restrictive means of furthering that compelling government

---

[3] Although there are no prevailing wage requirements or floors by which petitioners must abide, the wage must be a livable wage so minister doesn't seek secular employment.

interest as applied to this person. This simply cannot be shown in this case. Even if there may be a compelling governmental interest in trying to curb fraud, the rigidity with which this regulation is being applied substantially burdens Plaintiffs National Capital Presbytery and Mizo Presbyterian Church's selection of and petitioning for a minister which is *per se* religious exercise.  This substantially burdening rigidity is evident in both the underlying denial which focused primarily on which entity is the proper petitioner thus impinging on the ecclesiastical governance of the church and in the heightened evidentiary standard of what constitutes proper evidence of past compensation or the misinterpretation of the regulation by requiring that petitioner prove pay of a certain amount which is not what the regulation requires.

42. Because the administrative appeal decision let stand the earlier decision on the issue of which entity is the proper petitioner, with that type of logic, these plaintiffs are essentially foreclosed from ever filing a religious worker visa petition as their ecclesiastical rules dictate that the presbytery be the placing or petitioning entity even if the minister will serve a local congregation.

43. Even if this is not an excuse to sidestep the real issue which Defendants continued to maintain through their request for evidence and petition denial, on its face it is erroneous as it impermissibly elevates the standard of proof and it still results in a violation of RFRA in that the church is not able to hire the minister of its choice.

## COUNT TWO

## VIOLATION OF 5 U.S.C. §§ 702, 704,706 (APA CLAIMS)

44. The allegations contained in paragraphs 1 through 39 above are repeated and re-alleged as though fully set forth herein.

45. Plaintiffs have suffered a "legal wrong" or have been "adversely affected or aggrieved" by agency action. 5 U.S.C. § 702.  Plaintiffs are aggrieved by agency action for which there is no other adequate remedy in court.  5 U.S.C. § 704.

46. Defendants' unreasonable decision to ignore RFRA is unlawful and is causing Plaintiffs continued and irreparable harm.

47. The denial is arbitrary, capricious, and exceeds Defendants' statutory authority. 5 U.S.C. § 706(c)(2).

## COUNT THREE

## DECLARATORY JUDGMENT

48. The allegations contained in paragraphs 1 through 39 above are repeated and re-alleged as though fully set forth herein.

49. Pursuant to 28 U.S.C. § 2201 et seq. the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree.

50. Defendants in this case have reached a decision that is not in accordance with the law. Said decision has caused and continues to cause harm to Plaintiffs.  Therefore issuance of a declaratory judgment that Defendants' decision is erroneous and that Plaintiffs' petition should be approved is warranted.

51. Furthermore, Plaintiffs seek a declaratory judgment stating that the presbytery can be a petitioner in a religious worker visa petition even if the minister will serve a local congregation which is a separate legal entity under secular law.

## COUNT FOUR

## RELIEF UNDER THE MANDAMUS ACT

52. The allegations contained in paragraphs 1 through 39 above are repeated and re-alleged as though fully set forth herein.

53. Plaintiffs have a claim for mandamus relief under 28 U.S.C. § 1361 which provides the authority to compel the agency to perform a duty owed to Plaintiffs.  Defendants have failed to properly adjudicate Plaintiffs' petitions in conformity with the regulations and RFRA. Issuance of a writ of mandamus compelling Defendants to adjudicate the petition in accordance with the law is warranted.

## PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs pray that the Court grant the following relief:

A.  Assume jurisdiction over the matter;

B.  Issue a declaratory judgment holding that Defendants' denial of the I-129 R-1 petition is unlawful and contrary to law.

C.  Issue a declaratory judgment holding that the presbytery may be a proper petitioner even if the minister may serve a local congregation which is a separate legal entity.

D.  Order Defendants and those working under them to reverse their decision as to the denied I-129 petition and the dependent's I-539 application and immediately approve it.

E.  Award reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 and pursuant to 42 U.S.C. § 1988(b), and

F.  Grant any and all further relief this Court deems just and proper.

Dated this 19th day of November 2018.

/s/ Thomas K. Ragland
Thomas K. Ragland
Local Counsel for Plaintiffs
D.C. Bar No. 501021
Clark Hill, PLC
1001 Pennsylvania Ave NW
Suite 1300 South
Washington, DC 20004
Phone: (202) 552-2360
tragland@clarkhill.com

/s/ Olsi Vrapi[4]
Olsi Vrapi
Attorney for Plaintiffs
Noble & Vrapi, P.A.
5931 Jefferson St. NE, Suite A
Albuquerque, NM 87109
Phone:  (505) 352-6660
Fax:  (505) 872-6120
olsi@noblelawfirm.com

---

[4] Application for admission *pro hac vice* to be filed shortly.